## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | |
| 201 Gibraltar Road, Suite 150 | : | CIVIL ACTION |
| Horsham, PA 19044 | : | |
|         Plaintiff, | : | |
|     v. | : | No. |
| KEVIN M. BOONE | : | |
| 215 S. Patterson Blvd. | : | |
| Dayton, OH 45402 | : | |
|     and | : | |
| ROBERT S. BERNARDI | : | |
| 215 S. Patterson Blvd. | : | |
| Dayton, OH 45402 | : | |
|         Defendants. | : | |

## <u>COMPLAINT</u>

1.      Plaintiff, AAMCO Transmissions, Inc. ("Plaintiff" or "ATI"), is a Pennsylvania corporation, with its principal place of business located at 201 Gibraltar Road, Horsham, Pennsylvania 19044.

2.      Defendant, Kevin M. Boone ("Defendant" or "Boone"), is an adult individual who is a citizen of the State of Ohio with a principal place of business at 215 S. Patterson Blvd., Dayton, OH 45402.

3.      Defendant, Robert S. Bernardi ("Defendant" or "Bernardi"), is an adult individual who is a citizen of the State of Ohio with a principal place of business at 215 S. Patterson Blvd., Dayton, OH 45402.

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C.A. §1332 based upon the diverse citizenship of the parties and the amount in controversy which exceeds $75,000 exclusive of interest and costs.

5. Venue lies in this District pursuant to 28 U.S.C.A. §1391, in that ATI resides in this District, Defendants have transacted business with ATI continuously over the last several years in this District and the claims arise under a contract that was made in this District.

6. Since at least 1963, ATI has been engaged in the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission repair centers throughout the United States and Canada. ATI is the world's largest franchisor of transmission repair centers.

7. The AAMCO Transmission Center at issue herein is located at 215 S. Patterson Blvd., Dayton, OH 45402 (the "Center") and has been operating under the AAMCO trademark at the Center address long before the Defendants became AAMCO franchisees. The Center was first established under the AAMCO trademark in June of 1967, and has been advertised in the Dayton community as "AAMCO" ever since.

8. On March 3, 1993, ATI and Bernardi entered into a franchise agreement, pursuant to which Defendant was authorized to use and did use the name and mark "AAMCO" in connection with the operation of the Center (the "Franchise Agreement"). A true and correct copy of this Franchise Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

9. Before operating the Center, Defendant Bernardi attended ATI's intensive, four (4) week, owner training class in Pennsylvania.

10. On April 28, 2008, during the initial term of the Franchise Agreement, the parties agreed to amend the Franchise Agreement to include Defendant Boone as a franchisee (the "Amendment"). A true and correct copy of the Amendment is attached to the Franchise Agreement attached hereto at Exhibit "A".

11.     Specifically, the Amendment to the Franchise Agreement provides that:

The Franchisees shall be Robert S. Bernardi and Kevin M. Boone jointly and severally. The Franchisees hereby agree to be bound jointly and severally by all of the terms, conditions, covenants and obligations of the Franchise Agreement and related Franchise Documents.

*See* paragraph 1 to Amendment at Exhibit "A".

12.     On March 3, 2008, the Franchise Agreement renewed between the parties for an addition fifteen (15) year term in accordance with section 16.1 of the Franchise Agreement.

13.     Thereafter Bernardi and Boone continued to operate the Center under the Franchise Agreement.

14.     As provided under the Franchise Agreement, ATI shared with the Defendants its proprietary systems, information and trade secrets for operating a successful automotive repair business which ATI had developed over its 50 year history.

15.     In addition, Defendants were provided ATI's proprietary manuals, training materials, fleet accounts, customer lists and operating software.

16.     Defendants continued to operate the Center in accordance with the terms of the Franchise Agreement until early 2013, when Defendant Boone contacted ATI through his attorney and informed ATI that he had purchased the Center business in its entirety from Defendant Bernardi back in May of 2008, and that, although Boone has since operated the Center as an AAMCO Transmission Center in accordance with his Franchise Agreement, he denied he was ever a franchisee and informed ATI that he intended to de-identify the Center. A true and correct copy of the said letter is attached hereto and made a part hereof as Exhibit "B".

17.     The letter sent by Boone through his attorney contained two (2) glaring factual inaccuracies. First it was alleged in the latter that ATI had notice of the alleged sale of the Center

business from Bernardi to Boone back in 2008, which ATI did not, and second, it was alleged in the letter that Mr. Boone never became an AAMCO franchisee, which he most definitely did (see Amendment to Franchise Agreement at Exhibit "A").

18.     Thereafter, Defendant(s) made good on the threat from Boone's attorney to de-identify the Center location and cease operating as an AAMCO Transmission Center.

19.     In a letter dated April 11, 2013, ATI responded and reminded Defendant Boone that he executed an Amendment to the Franchise Agreement and was fully bound to ATI as a franchisee thereunder.  In the letter, ATI demanded that Defendant(s) immediately re-identify the Center, report all business, and pay current all fees due and owing. A true and correct copy of the said letter is attached hereto and made a part hereof as Exhibit "C".

20.     Defendant(s) refused to comply with ATI's demand that Defendants cure the abandonment and wrongful termination of the Franchise Agreement.

21.     Section 19.2 of the Franchise Agreement, entitled "Covenant Not-to-Compete," provides in pertinent part that:

> For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center.   The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

*See* Ex. "A".

22.     In violation of the Franchise Agreement, Defendants continue to operate a competing transmission repair business at the former Center location, under the name "Dayton Transmission Repair & Auto Service" (the "Competing Business").

## COUNT I - BREACH OF FRANCHISE AGREEMENT -
## SPECIFIC PERFORMANCE

23.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 22 above.

24.     ATI is entitled to specific performance of Section 19.2 of the Franchise Agreement which provides that, for a period of two years following termination, Defendants will not, directly or indirectly, engage in the transmission repair business within a radius of ten (10) miles of the former Center location.

25.     Defendants are currently operating the Competing Business at the former Center location, which has been in the AAMCO chain since June of 1967, armed with ATI's confidential information and materials, trade secrets, and unique procedures and systems developed by ATI, which conduct is causing ATI irreparable harm.

26.     Further, Defendants' refusal to honor the covenant not-to-compete interferes with ATI's ability to develop the market, retain the goodwill and re-establish the presence of the AAMCO name in this market, and is causing ATI irreparable harm.

27.     ATI has no adequate remedy at law for damages, and unless specific performance of the covenant not-to-compete, is ordered and injunctive relief granted, ATI will continue to suffer irreparable harm.

## COUNT II – BREACH OF CONTRACT
## LOST FUTURE ROYALTIES

28.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 27 above.

29.     Effective January 29, 2013, Defendants breached the Franchise Agreement by wrongfully terminating the Franchise Agreement without cause.

30.     But for the wrongful unilateral termination by Defendants, ATI would have continued to earn and collect weekly franchise fees under the Franchise Agreement through March 3, 2023.

31.     By terminating the franchise prematurely, Defendants have wrongfully deprived ATI of the franchise fees it would have been entitled to collect under the Franchise Agreement.

32.     The amount of lost fees suffered by ATI is yet to be calculated but is estimated to be in excess of $500,000.

<u>COUNT III – COSTS AND ATTORNEYS' FEES</u>

33.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 32 above.

34.     Pursuant to Section 21.5 of the Franchise Agreement, Defendants agreed to pay all costs incurred by Plaintiff in bringing this action, including attorneys' fees.

35.     Upon the filing of this Complaint, Plaintiff ATI has incurred a filing fee of Three hundred fifty dollars ($350.00) in this matter.

36.     Plaintiff ATI has incurred and continues to incur attorneys fees in the pursuit of this action.

<u>RELIEF SOUGHT</u>

WHEREFORE, ATI requests the following relief:

A.     That Defendants, their respective agents, servants, employees and those persons in active concert or participation with him, be preliminarily and permanently enjoined and restrained from operating a transmission repair business for two (2) years at or within ten (10) miles of the former Center location of any other AAMCO Transmission Center;

B.      That Defendants be ordered to file with the Court and to serve on ATI within

thirty (30) days after the issuance of any preliminary and/or permanent injunction herein, a report

in writing, under oath, setting forth in detail the measures undertaken by Defendants to comply

herewith;

C.      That a money judgment be entered in ATI's favor and against Defendant in an

amount yet to be determined but believed to be in excess of $500,000 to compensate ATI for lost

future royalties as alleged in Count II above;

D.      That a money judgment be entered in ATI's favor and against Defendant with

respect to ATI's costs and attorney's fees as alleged in Count III above; and

E.      That ATI be awarded such other and further relief to which it may be entitled.

Date: 4/17/13

William B. Jameson
Attorney ID # 58949
Attorney for Plaintiff
AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, Pennsylvania 19044
(610) 668-2900

# EXHIBIT A

# AAMCO TRANSMISSIONS, INC.
## Franchise Agreement

This Agreement has been entered into this 3rd day of March 19 93 at Bala Cynwyd, Pennsylvania, between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Bala Cynwyd, Pennsylvania, referred to as "AAMCO", and

Robert S. Bernardi

referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted exclusively to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1 **Franchise**. This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" in his Center.

(a) Franchisee must successfully complete AAMCO's training course.

(b) Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

(c) Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2 **Location**. The center shall be located as follows:

215 South Patterson Boulevard
Dayton, Ohio 45402

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3 **Market**. AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

2.1 **Trademark**. Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to use any other mark or name in the operation of his center. In addition, Franchisee agrees not to register the word "AAMCO" as part of his firm or corporate name.

3.1 **Franchise Fee**. Commencing with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of five (5) % of the gross receipts of the preceding week. "Gross receipts" shall mean all forms of consideration received for parts or services in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

4.1    **Business Reports.**    Commencing with the opening of his center, Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with such other information or reports as AAMCO may request.  These should accompany a check or money order for the amount required under section 3.1, and should be mailed so as to be received no later than Tuesday of each week.  Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees.  In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

5.1    **General Policies.**    Franchisee  agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name  AAMCO.

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions.  Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable.

5.2    **Performance Standards.**    Except as otherwise approved in writing by AAMCO, which ap-proval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time.  Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee.  Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs.  Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to operate his center in such manner so as to avoid customer complaints. Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center.  Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center.  Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO."

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe.  Franchisee further agrees to attend such meetings and training sessions as AAMCO may require and to direct any of his employees to attend such meetings and training sessions as AAMCO may require.

In his operation of the center Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO multi-check, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to vigorously and aggressively promote the repair of transmissions making the greatest possible use of the advertising, promotional, and merchandising techniques and materials provided by AAMCO.  Franchisee specifically agrees to participate in all sales and promotional campaigns or activities of AAMCO.

5.3    **Appearance Standards.**    Franchisee agrees to keep his center's premises in a clean, whole-some, attractive and safe condition, and to keep it in good maintenance and repair.  Franchisee agrees to maintain the interior and exterior painting and decor, and furnishings of his center in such a manner and form as may be required by AAMCO.  Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

5.4    **Maintenance Standards.**    Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

Franchisee further agrees to conduct his center in accordance with AAMCO's standards.

5.5    **Non-Disclosure.**    Franchisee agrees that he will not furnish any information concerning AAMCO's service program, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO merchandising program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its merchandising program and techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

6.1   **Obligations of AAMCO.**   AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

Prior to the opening of a center, AAMCO will make available to Franchisee its customary training course concerning the operation of an AAMCO center. After the opening of his center, AAMCO may provide a training program or programs to Franchisee and to such of his employees as AAMCO may designate. All expenses of travel, lodging, meals and other living expenses for Franchisee or his employees in subsequent programs shall be borne and paid by Franchisee.

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell. AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Section 9 of this Agreement, as Franchisee wishes from time to time to order; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1   **National Advertising.**   Franchisee agrees to participate in advertising programs at the national level when established or directed by AAMCO. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

7.2   **Local Advertising.**   Franchisee acknowledges that it is mandatory to participate in advertising programs and promotional activities at the local level. Franchisee specifically agrees to adhere to a local advertising budget developed with the assistance of AAMCO.

Franchisee agrees to share local advertising expenses with other franchisees in related, adjoining, or overlapping Areas of Dominant Influence, or where coverage from local advertising may permeate, based on formulas provided by AAMCO.

Franchisee acknowledges that AAMCO reserves the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to an agency approved by AAMCO.

If Franchisee fails to pay promptly an amount due his advertising agency or his local AAMCO advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee. Franchisee recognizes that all local advertising inures to his benefit and to the benefit of all franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute his proportionate share, local advertising expenditures confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local advertising group or pool seek the enforcement of this obligation.

Franchisee agrees that no advertising shall be employed by him unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

7.3   **National Creative Advertising.**   Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

8.1   **Signs.**   Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.



PLEASE INITIAL

**9.1   Standards and Specifications for Equipment and Inventory.**    AAMCO shall fix and determine all standards and specifications for the equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge. (see addendum)

**9.2   Equipment, Supplies and Inventory.**    If Franchisee requests to purchase equipment, supplies and inventory from AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee. If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quality, and adjust the price, after notice to Franchisee.

**9.3   Operating Inventory.**    Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO, and agrees that the use exclusively of parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications) is an essential condition of the performance of this Agreement. Franchisee agrees to purchase exclusively parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications). At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications. Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination. AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination. (see addendum)



PLEASE INITIAL

**9.4   Product Warranties.**    There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

**10.1   Warranty Program.**    Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center. Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

**10.2   Warranty Payment Rates.**    Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required. The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) working days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee. If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

**10.3   Prohibition Against Other Warranties.**    Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO. There are no warranties express or implied made by AAMCO to the customer in connection with any product furnished by AAMCO under this Agreement other than the printed form approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO to either the customer or Franchisee.

**11.1   Accounting Forms.**    Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request. Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request. Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO.

**11.2   Inspection of Records.**    AAMCO's representative may enter Franchisee's center to inspect books and records and to verify the accuracy of Franchisee's reports. Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

**11.3   Penalties.**    If it is determined that Franchisee's actual gross receipts are greater than Franchisee's reported receipts by two percent (2%) or more, then he shall pay AAMCO immediately any deficiency in franchise fees together with interest on that amount at the rate of eighteen percent (18%), or the legally permissable rate, whichever is less, per year, calculated from when such fees should have been paid. Franchisee also agrees to reimburse AAMCO for any and all expenses connected with such inspection, including but not limited to reasonable accounting and attorneys' fees. Franchisee further acknowledges and agrees that failure to account for all his center's gross receipts gives AAMCO the right to assess Franchisee a penalty of 50% of any such underreported gross receipts.

**11.4   Financial Statements.**    Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year. In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period. All statements required by this paragraph may be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles. All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee; Franchisee may keep its books and records on either a calendar year or fiscal year basis.

12.1 **Insurance.** Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability and workers' compensation insurance, including coverage for AAMCO as an additional named insured. In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined. Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid. Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO. Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

12.2 **Indemnity Agreement.** Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center. This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents. The minimum amounts of insurance outlined in paragraph 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

12.3 **Independent Contractor.** Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever. Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever. Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO. Franchisee specifically agrees that he shall not do so.

13.1 **Security Deposit.** Franchisee acknowledges that he has deposited with AAMCO the sum of $3,000 as security for compliance with all the provisions of this Agreement. This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement. AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints. It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine. AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address. Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $3,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $3,000.



PLEASE INITIAL



(see addendum)

14.1 **Defaults in Payment.** Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued. Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissable rate, whichever is less, from thirty (30) days after the due date until payment. The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts. Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fee. In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor. Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.3.

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

15.1 **Assignment.** This Agreement is a personal obligation of the undersigned Franchisee, and his rights to the use of AAMCO's service marks and trademarks are not assignable  nor transferable under any circumstances except in strict compliance with the provisions herein.

(a)  In the event of Franchisee's death, his rights shall pass to his heirs or next of kin provided that they shall immediately attend and successfully complete AAMCO's training course as provided for in this Agreement.  Such persons must attend the AAMCO Operator's Training Course prior to the third class offered after the date of the death of Franchisee.  Failure to do so will result in the termination of all rights conferred under this Agreement.

(b)  If Franchisee, as an individual, desires to transfer his rights under this Agreement to a corporation he may do so only upon the following terms and conditions:

(1)  Franchisee's name remains on the Agreement and the corporation is added as a co-franchisee on the Agreement.

(2)  The corporation be newly organized and its activities be confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3)  Franchisee is the owner of all the stock of the corporation, and is the principal executive officer.

(4)  All money obligations of Franchisee to AAMCO must be satisfied.

(5)  The corporation and all its officers sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement.  It is expressly understood that the assumption of Franchisee's obligation by any corporation does not limit Franchisee's personal obligations under this Agreement and Franchisee and the corporation shall be jointly and severally liable.

(6)  Franchisee agrees that this Agreement will not be transferred to a corporation, or to an individual by transfer of stock, or by any other means.

(c)  If Franchisee has organized a corporation, the capital stock shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO.  There may be a sale of all of Franchisee's captial stock on the same conditions mentioned above in this section, to a purchaser as though the person acquiring such stock were the purchaser under section 15.2 of this Agreement.  All stock certificates shall have endorsed upon them the following:

"The transfer of this stock is subject to the terms and conditions of a Franchise Agreement

dated ___March 3,_____ 19 _93_____ . between AAMCO Transmissions, Inc., and

___Robert S. Bernardi_____."

(d)  If Franchisee is a partnership and all partners desire to transfer the franchise to a cor-poration, they may do so only upon the terms and conditions as set forth above, provided that the partners own all the stock of the corporation and are the principal executive officers thereof.  The right of any partner to sell, assign, pledge, mortgage or transfer his interest shall be subject to the same conditions governing the sale, assignment, pledge, mortgage or transfer of capital stock of a corporation as set forth above.

(e)  Franchisee shall mean each partner who is an AAMCO franchisee or each stockholder who is an AAMCO franchisee, and each such individual shall be subject to all of the provisions of this Agreement, jointly and severally.

(f)  If a corporation is a co-franchisee, then the corporation shall disclose to AAMCO the names and addresses of all officers and directors and shall whenever there is any change, immediately notify AAMCO of such change.

15.2 **Sale.**  If Franchisee desires to sell his rights hereunder, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below.  AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied.  The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers.  Franchisee and other person or persons having control of the affairs of a corporate franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale.  Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

If Franchisee sells his AAMCO center and the purchaser is approved by AAMCO, then the purchaser must sign a current form of the franchise agreement for a fifteen (15) year term.

**15.3   Attempted Sale, Assignment or Transfer**. If Franchisee attempts to sell, assign or transfer his rights under this Agreement without following the procedures required by this Agreement, then the Agreement shall terminate automatically pursuant to these provisions.  In that event, AAMCO retains all moneys of Franchisee which are being held under deposit, or otherwise, to be applied as AAMCO may elect towards liquidated damages or towards other damages which may be awarded to AAMCO as a result of termination of this Agreement.  Franchisee shall remain jointly and severally liable for all moneys owed under this Agreement despite any unauthorized sale, assignment or transfer or attempt to sell, assign or transfer Franchisee's AAMCO center.

**15.4   Notification of Resale.**   Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

**16.1   Duration of the Franchise**. This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years.  Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years.  Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a)  Any default set forth in section 18.1 of this Agreement not withstanding compliance with paragraph 18.1(b); or

(b)  Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO.  AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

**17.1   No Waiver by AAMCO**.   AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

**18.1   Termination**.

(a)  AAMCO may terminate this Agreement by giving written notice of termination to Franchisee upon the occurrence of any of the following:

(1)  A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2)  If Franchisee unreasonably delays in opening his center.  In no event shall a period of less than eight (8) months be considered an unreasonable delay.

(3)  If Franchisee terminates or attempts to terminate this Agreement for any reason.  If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4)  In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5)  Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6)  Failure to make any payments to AAMCO required under any provision of this Agreement.

(7)  If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8)  If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9)  If Franchisee shall commit a violation of any provision of this Agreement.

(b) Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement. For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default. Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement. It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c) Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

### 19.1  Procedures after Termination.

(a) Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1) Promptly pay AAMCO all sums due and owing.

(2) Promptly pay AAMCO the sum of $5,000 to be held by AAMCO to cover the cost of warranty work for customers of Franchisee's former center. If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3) Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4) Promptly surrender to AAMCO all signs, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5) Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6) Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7) At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(b) Upon termination or Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein. If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement. The full purchase price of the center shall be:

(1) In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

(2) In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center. AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine. In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c) If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal. In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d) If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so. In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

(e) The termination of this Agreement shall not affect, modify or discharge any claim, rights or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

19.2 **Covenant Not-To-Compete.** Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a) During the term of this Agreement and any renewal thereof, Franchisee shall not engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b) For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c) Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO. Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled. If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d) Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1 **Applicable Laws.** Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

20.2 **Federal Trade Commission Orders.** Franchisee acknowledges receipt of copies of FTC Orders No. 8816 and C-2305 and Franchisee agrees to adhere to the provisions of these Orders in his dealings with the public and with AAMCO.

21.1 **Jurisdiction.** This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania and shall be interpreted according to the laws of Pennsylvania. Franchisee hereby agrees that mailing to his last known address by certified or registered mail of any process shall constitute lawful and valid process. Franchisee further agrees to the jurisdiction and venue of any proper court of general jurisdiction in either Philadelphia County, Pennsylvania, Montgomery County, Pennsylvania or in the county in which AAMCO has its principal place of business. Franchisee more particularly agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania with respect to any proceedings which arise out of or are connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

21.2 **Jury Trial Waived.** Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

21.3 **Severability.** In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision has never been a part of it.

21.4   **Notice.**   Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested to the other party at the addresses set forth below, unless notice is given of a change of address.  However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

21.5   **Recovery of Costs and Attorneys' Fees**.   In any court or arbitration proceeding brought by either party hereto, arising out of or based upon this Agreement, all court costs, attorneys' fees and other expenses related to any claim on which a party prevails shall be paid to that party by the non-prevailing party.

22.1   **Mediation and Arbitration.**

(a)   Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b)   All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO.  Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

23.1   **Entire Agreement**.   This Agreement consisting of ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties. Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                                                    AAMCO TRANSMISSIONS, INC.

By: _____

WITNESS                                                 FRANCHISEE  -  Robert S. Bernardi          (SEAL)

WITNESS                                                 FRANCHISEE                                        (SEAL)

Address for AAMCO Transmissions, Inc.      Address for Franchisee:
One Presidential Boulevard
Bala Cynwyd, PA  19004                            215 South Patterson Boulevard
                                                              Dayton, Ohio 45402

AT-89-7 (3) Resale                                (10)

## ADDENDUM TO FRANCHISE AGREEMENT

Section 9.1 of the Franchise Agreement is deleted and the following is inserted:

**9.1   Standards And Specifications For Equipment And Inventory.** AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards, specifications and requirements. AAMCO agrees to furnish the standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

Franchisee acknowledges that AAMCO may update such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies to comply with such updated requirements.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the _____3rd_____ day of __March____, 1992.3

ATTEST:                                AAMCO TRANSMISSIONS, INC.

_____

                                       By: _____

_____
Witness                                _____
                                       Franchisee - Robert S. Bernardi

_____              _____
Witness                                Franchisee

## ADDENDUM TO FRANCHISE AGREEMENT

Section 9.3 of the Franchise Agreement is hereby amended to include the following provision:

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center.  Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications.  Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training.  AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the ____3rd____ of _____March_____, 199_3_ .

Attest:

_____

_____
Witness

AAMCO TRANSMISSIONS, INC.

By: _____

_____
FRANCHISEE - Robert S. Bernardi

_____
Witness

_____
FRANCHISEE

(6/91)

## ADDENDUM TO FRANCHISE AGREEMENT

The fourth subparagraph of section 13.1 of the franchise agreement is deleted and the following is inserted:

AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as published in the Wall Street Journal, averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the _____3rd_____ day of _____March_____, 19__93__.

ATTEST:

AAMCO TRANSMISSIONS, INC.

By: _____

_____
Witness

_____
FRANCHISEE - Robert S. Bernardi

_____
Witness

_____
FRANCHISEE

## AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS, a Franchise Agreement was entered into on March 3, 1993, by and between AAMCO Transmissions, Inc., Franchisor, and Robert S. Bernardi, Franchisee, for a AAMCO center located 215 S. Patterson Blvd., Dayton, OH 45402 (the "Franchise Agreement");

WHEREAS, on or about March 3, 1993 Franchisee entered into franchise related agreements with Franchisor and local advertising pool agreements with Franchisee's local advertising pool that include, as applicable, Installment Sale Contract for AAMCO Sign, AAMCO DirecTech User License Agreement, AAMCO FOCUS User License Agreement, Telephone Number Use Agreement, Electronic Debit Authorization, Lease Rider, Kwiktest-Plus Harness Subscription Program, AAMCO Tech Video Library Agreement, Local Advertising Pool Commitment Letter, Local Advertising Pool Installment Note, Local Advertising Pool Agreement, and Local Advertising Pool Bylaws (collectively "related Franchise Documents");

WHEREAS, Franchisee desires to enter into a partnership composed of himself and Kevin M. Boone;

WHEREAS, the Franchise Agreement provides that all amendments must be in writing;

NOW, THEREFORE, for and in consideration of the promises set forth herein, and intending to be legally bound hereby, the parties agree that the Franchise Agreement and the related Franchise Documents are amended as follows:

1. The Franchisees shall be Robert S. Bernardi and Kevin M. Boone jointly and severally. The Franchisees hereby agree to be bound jointly and severally by all of the terms, conditions, covenants and obligations of the Franchise Agreement and related Franchise Documents.

2. All of the other terms, conditions, covenants and obligations set forth in the Franchise Agreement and related Franchise Documents shall remain in full force and effect, and be binding upon Robert S. Bernardi and Kevin M. Boone.

(Rev 2/08)

04/30/2008  07:32    9372233782

IN WITNESS WHEREOF, the parties have hereto set their hands and seals this 28 day of

APRIL_____, 2008

DAVID P. COPFER, NOTARY PUBLIC
IN AND FOR THE STATE OF OHIO
MY COMMISSION EXPIRES MARCH 27, 2013

ATTEST:

AAMCO TRANSMISSIONS, INC.

By:_____
Todd P. Leff, President

_____ 4/28/08
Witness

_____ (Seal)
Franchisee – Robert S. Bernardi

_____ 4/28/08
Witness

_____ (Seal)
Franchisee – Kevin M. Boone

(Rev 2/08)

# EXHIBIT B

# MYERS & FRAYNE CO., LPA

## ATTORNEYS AT LAW

Telephone: 937-224-0076
Facsimile:  937-224-5782

18 West First Street, Suite 200
Dayton, Ohio 45402

January 29, 2013

**RECEIVED**

JAN 3 1 2013

LAW DEPARTMENT

*Via Federal Express (Overnight)*

AAMCO Transmissions, Inc.
One Presidential Boulevard
Bala Cynwyd, Pennsylvania  19004

Re:    Robert S. Bernardi
         215 South Patterson Boulevard
         Dayton, Ohio  45402

Ladies and Gentlemen:

RSB Co., Inc. owned and operated the AAMCO Transmission business located at 215 South Patterson Boulevard, Dayton, Ohio 45402 (the "Business").  The owner of RSB Co., Inc. was Roberts S. Bernardi, who believed he owned an AAMCO Transmission franchise for the Business.

This firm represents Kevin M. Boone, who purchased from Robert S. Bernardi all of the outstanding shares of RSB Co., Inc. on May 31, 2008.

Although Mr. Bernardi communicated with you about his sale to Mr. Boone and you had full disclosure about the same, Mr. Boone has never become an AAMCO franchisee.

Mr. Boone and RSB Co., Inc. no longer desire to use the AAMCO name or be an authorized AAMCO dealer and desire to terminate the AAMCO relationship.  In connection with terminating the relationship with AAMCO:

(1)      RSB will pay all sums due and owing as of the date hereof.

(2)      RSB will take care of all warranties for work at the Business.

(3)      RSB will discontinue the use of the AAMCO name and marks.

(4)      RSB will surrender to you all signs, stationery, letterheads, forms, repair orders, printed matter, and advertising material containing the AAMCO name.  Please advise as to when you want to pick it up.

AAMCO Transmissions, Inc.
Page 2
January 29, 2013

(5)    RSB will discontinue all advertising as an authorized AAMCO dealer.

(6)    RSB will transfer to AAMCO or AAMCO's designee its telephone number.
Please advise when and how you want this to occur.

Please confirm that you have received this letter and how you want to proceed with respect to
items (4), and (6).

Very truly yours,

*Anne M Frayne*

Anne M. Frayne

AMF/jms

cc:    Robert S. Bernardi
       Kevin Boone

Boone,Kevin/RobertS.Bernardi,Sr.
AAMCOTransmissionsLtr1
1/25/13/2/jms

# EXHIBIT C



April 11, 2013

VIA REGULAR MAIL and FAX (937) 224-5782
Anne M. Frayne, Esquire
18 West First Street, Suite 200
Dayton, OH 45402

> Re:   <u>AAMCO Transmissions, Inc. and Kevin M. Boone,</u>
>       <u>AAMCO Transmission Center</u>
>       <u>215 South Patterson Blvd.</u>
>       <u>Dayton, OH 45402</u>

Dear Ms. Frayne:

Your letter dated January 29, 2013, has been forwarded to me for action. In your letter you claim that your client Mr. Boone was never a franchisee of AAMCO Transmissions, Inc. ("ATI"). Further, you allege in your letter that on May 31, 2008, Mr. Boone bought the AAMCO Transmission Center located at 215 South Patterson Blvd., Dayton, OH 45402 (the "Center") from Mr. Bernardi without becoming an AAMCO franchisee and that Mr. Bernardi made the terms of that transaction clear to ATI.

These allegations are contrary to the Amendment of Franchise Agreement in our files which is executed by, between and among ATI, Mr. Bernardi and Mr. Boone, dated April 28, 2008 – before the alleged sale you refer to – wherein the parties expressly agreed that going forward "[t]he Franchisees shall be Robert S. Bernardi and Kevin M. Boone jointly and severally." The Amendment further provides that:

> The Franchisees [Bernardi and Boone] hereby agree to be bound jointly
> and severally by all of the terms, conditions, covenants and obligations of
> the Franchise Agreement and related Franchise Documents.

With regard to your claim that Mr. Bernardi later gave notice to ATI that the Center business was sold by Mr. Bernardi to Boone who would not be a franchisee, our files contain no such notice. Moreover, notwithstanding the undisclosed transaction that may have occurred between Mr. Boone and Mr. Bernardi, Mr. Boone continued to operate as an AAMCO franchisee; he operated the Center business as an AAMCO Transmission Center using AAMCO's proprietary information, fleet accounts and good will in the community. Now, almost five (5) years later, your client is claiming for the first time that he was never a franchisee. ATI rejects this argument as a transparent attempt to escape his continuing obligations owed to ATI.

ATI has recently discovered that Mr. Boone has made good on the threat in your letter to de-identify the Center which has been an AAMCO location since June of 1967.  In violation of the Franchise Agreement, your client has abandoned the franchise and unlawfully converted the Center to Dayton Transmission Repair.

This letter shall serve as written demand that Mr. Boone immediately re-identify the Center, report all business, and pay current all fees due and owing.  If your client claims that he has sold the Center business to a third party, ATI requires that he produce a true and correct copy of the agreement of sale.

I look forward to hearing from you.

Sincerely,

William B. Jameson
Associate General Counsel

cc:     Cindy Clark, Jack Bachinsky, Bruce Chidsey, Rich Kolman, Brian O'Donnell

# Xerox WorkCentre 5335
## Transmission Report

G3-ID
Local Name
Company Logo

215-956-0340
American Driveline

Date & Time : 04/11/2013  10:40 AM
Page : 1(Last Page)

The job has been sent.
Original Size: 8.5 x 11"



**The Trusted Experts for over 50 Years**

April 11, 2013

VIA REGULAR MAIL and FAX (937) 224-5782
Anne M. Frayne, Esquire
18 West First Street, Suite 200
Dayton, OH 45402

Re:   <u>AAMCO Transmissions, Inc. and Kevin M. Boone,</u>
AAMCO Transmission Center
215 South Patterson Blvd.
Dayton, OH 45402

Dear Ms. Frayne:

Your letter dated January 29, 2013, has been forwarded to me for action. In your letter you claim that your client Mr. Boone was never a franchisee of AAMCO Transmissions, Inc. ("ATI"). Further, you allege in your letter that on May 31, 2008, Mr. Boone bought the AAMCO Transmission Center located at 215 South Patterson Blvd., Dayton, OH 45402 (the "Center") from Mr. Bernardi without becoming an AAMCO franchisee and that Mr. Bernardi made the terms of that transaction clear to ATI.

These allegations are contrary to the Amendment of Franchise Agreement in our files which is executed by, between and among ATI, Mr. Bernardi and Mr. Boone, dated April 28, 2008 – before the alleged sale you refer to – wherein the parties expressly agreed that going forward "[t]he Franchisees shall be Robert S. Bernardi and Kevin M. Boone jointly and severally." The Amendment further provides that:

The Franchisees [Bernardi and Boone] hereby agree to be bound jointly and severally by all of the terms, conditions, covenants and obligations of the Franchise Agreement and related Franchise Documents.

With regard to your claim that Mr. Bernardi later gave notice to ATI that the Center business was sold by Mr. Bernardi to Boone who would not be a franchisee, our files contain no such notice. Moreover, notwithstanding the undisclosed transaction that may have occurred between Mr. Boone and Mr. Bernardi, Mr. Boone continued to operate as an AAMCO franchisee; he operated the Center business as an AAMCO Transmission Center using AAMCO's proprietary information, fleet accounts and good will in the community. Now, almost five (5) years later, your client is claiming for the first time that he was never a franchisee. ATI rejects this argument as a transparent attempt to escape his continuing obligations owed to ATI.

AAMCO TRANSMISSIONS & TOTAL CAR CARE
201 Gibraltar Road • Horsham, PA 19044 • Tel: 610-668-2900

| # | Job | Remote Station | Start Date & Time | Duration | Pages | Protocol | Contents | Status |
|---|-----|----------------|-------------------|----------|-------|----------|----------|--------|
| 1 | 4637 | 937 224 5782 | 4-11; 10:39 AM | 30 Secs | 2/2 | Super G3 | | Completed |